UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ORLANDO TAYLOR,

      Plaintiff,                           Civil Action No.  18-13180

v.                                  HON.  VICTORIA A. ROBERTS
                                   U.S. District Judge
                                   HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

     Plaintiff Orlando Taylor ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying his application for Supplemental Security Income ("SSI") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #13] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Docket #12] be DENIED.

## PROCEDURAL HISTORY

     On March 21, 2016, Plaintiff filed an application for SSI, alleging disability as of October 15, 2015 (Tr. 178, 185).  After the initial denial of the claim, he requested an

administrative hearing, held on December 11, 2017 in Fort Gratiot, Michigan  (Tr. 32).

Administrative Law Judge ("ALJ") Roy E. LaRoche, Jr. presided.  Plaintiff, represented by

attorney Wesley Lamey, testified (Tr. 39-52) as did Vocational Expert ("VE") Diane Regan

(Tr. 52-55). On March 16, 2018, ALJ LaRoche found that Plaintiff was not disabled (Tr. 10-

32).  On August 28, 2018, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed for

judicial review of the final decision on October 12, 2018.

## BACKGROUND FACTS

Claimant, born October 2, 1981, was 36 when the ALJ made the non-disability

determination (Tr. 32, 177).   He obtained a GED and worked previously as an asphalt

applier and general maintenance worker, and at the time of the application was working as

a general laborer (Tr.  197).   His application for benefits alleges disability due to chronic

pain from sciatica, congestive heart failure, extreme fatigue, shortness of breath, and a

cholecystectomy (Tr. 196).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony:

He lived with his fianceé and their two children, ages nine and two (Tr. 39).  His

fianceé was temporarily incarcerated at the time of the hearing (Tr. 39).  He was responsible

for the care of his children, adding that the children's grandmother was watching them during

the hearing (Tr. 40).  He received food stamps and Medicaid coverage (Tr. 40).  His driver's

license had been suspended for driving under the influence of marijuana and careless driving

(Tr. 41).  His past work as a machine operator required him to lift up to 50 pounds and stay on his feet all day (Tr. 42).  He later worked at an asphalt-related job "under the table" until undergoing valve replacement surgery in February, 2016 (Tr. 42).  After surgery, he was physically unable to return to the asphalt work (Tr. 44).  From July, 2017 forward, he had been unable to followup with his cardiologists due to his own three-month incarceration for a DUI (Tr. 44).  Prior to his incarceration, he was unable to procure regular post-surgery checkups due to difficulty finding a primary care physician (Tr. 45).

Plaintiff experienced weekly episodes of tachycardia brought on by increased activity (Tr. 48).  He had not received physical restrictions by a cardiologist (Tr. 48).  He currently took Metoprolol and Coumadin (Tr. 46).  He acknowledged the possibility that he had current embolisms or aneurysm, but was waiting another two weeks to see the cardiologist so that his fianceé, due to be released from prison in two weeks, could accompany him (Tr. 47).  He had been diagnosed with a methamphetamine disorder but had not used the substance in the past year (Tr. 49).  He had not been told that the methamphetamine use could have contributed to the heart problems (Tr. 49).  He did not experience psychological problems (Tr. 49).

Plaintiff's activities included "regular household work" (Tr. 49).  He took his children for walks when possible, albeit at a slow pace (Tr. 50, 52).  The children's grandma had been a "big help" by visiting and taking the children on outings (Tr. 50).  He was responsible for the cooking, laundry, and shopping chores (Tr. 50-51).  He was able to care for his personal

needs (Tr. 51). He could lift and carry his 30-pound daughter for "short distances" (Tr. 51).

**B.  Medical Evidence**

In September, 2015, Plaintiff sought emergency treatment for chest pain which began at work while he was sweeping floors (Tr. 236). Emergency records note a medical history of congenital heart disease and cardiac valve surgery (Tr. 237). Plaintiff reported tobacco and marijuana use (Tr. 238). Pulse Ox showed 100 percent saturation (Tr. 238). He exhibited mild tachycardia and a systolic murmur (Tr. 239). Lab results were positive for amphetamines (Tr. 239). A chest x-ray was unremarkable (Tr. 242). Cardiac records note a diagnosis of aortic valve stenosis (Tr. 243). Plaintiff reported episodes of shortness of breath (Tr. 244). The same month, an ultrasound of the abdomen taken in response to Plaintiff's report of upper right quadrant pain was positive for cholecystitis (Tr. 278). October, 2015 records note that Plaintiff made a normal recovery following a laparoscopic cholecystectomy (Tr. 312, 317, 625, 628).

In December, 2015, Plaintiff sought emergency treatment for shortness of breath and fatigue (Tr. 392, 612). He reported that he was still able to work in "construction/physical labor" (Tr. 392). CT of the chest was positive for heart enlargement and an aneurysm of the ascending thoracic aorta with moderate-severe regurgitation of the aortic valve with an ejection fraction of 50 to 55 percent (Tr. 267-270, 610, 636). He self-discharged against medical advice (Tr. 612). He was cautioned not to perform heavy lifting and directed to stop the use of tobacco and marijuana (Tr. 305-306).

In February, 2016, Plaintiff underwent an ascending aortic repair (Tr. 288). Discharge records note that Plaintiff was "doing well" until a few months earlier when he developed progressive symptoms of heart failure (Tr. 288). Plaintiff admitted to methamphetamine use one day prior to his admission (Tr. 295). He denied addiction, noting that he was sober while in prison between 2001 and 2013 (Tr. 295). Nine days following surgery, he left the hospital against medical advice but was in stable condition at the time of the self-discharge (Tr. 289, 403, 410, 442). His post-surgical ejection fraction was measured at 58 percent, reflecting a "low normal" range (Tr. 598). "Home visit" records from the same week show that Plaintiff continued his recovery at home (Tr. 329). Plaintiff was advised to start a "walking program," and avoid crowds and excessive cold (Tr. 697). He was precluded from lifting five pounds or more (Tr. 704).

Later the same month, cardiologic surgeon Kachin S. Parikh, M.D. noted that Plaintiff continued to "do well" following surgery (Tr. 453). Imaging studies of the chest show that the heart remained enlarged (Tr. 604). A March, 2016 EKG showed a normal sinus rhythm with evidence of a prior myocardial infarction (Tr. 285). Records from the following month note that Plaintiff failed to followup with a prescription for Warfarin (Tr. 456). He was cautioned to remain compliant with blood thinning medication after tests measuring the potential for thrombosis showed abnormally high results (Tr. 743). On March 31, 2016, Plaintiff reported that he was currently up north and would not be back for three days (Tr. 743). In April, 2016, Plaintiff again missed dosages of Warfarin (Tr. 748). June, 2016

records note that he was overdue to have blood drawn (Tr. 757).  He was discharged for non-compliance with medication therapy the following month (Tr. 758).

In March, 2017, Plaintiff sought emergency treatment for left arm tingling but denied other complaints (Tr. 732).  A chest x-ray was negative for acute disease (Tr. 738).  He was prescribed beta blockers and discharged (Tr. 735).  In May, 2017, Dr. Parikh noted that Plaintiff's treatment for the congenital heart condition had been compromised by "legal issues" and recent jail time (Tr. 764).  Plaintiff reported that he was "doing light masonry work" and denied dizziness, palpitations, or leg swelling (Tr. 763).  He reported that he felt "well" (Tr. 763).  August, 2017 imaging studies show an enlarged heart but no evidence of an acute pulmonary embolism (Tr. 767).  November, 2017 records by Mini Sunikumar, M.D. note Plaintiff's report that he did not have acute complaints (Tr. 791).  December, 2017 records by Dr. Sunikumar state that tests for thrombosis potential were improved (Tr. 772).  Plaintiff reported that he continued to use tobacco and marijuana (Tr. 772).  He denied chest pain or shortness of breath (Tr. 773).

## C.    Vocational Expert Testimony

VE Regan classified Claimant's past relevant work as a blow mold machine operator as semiskilled and exertionally light and asphalt applicator as skilled and exertionally medium[1] (Tr. 54).  The ALJ then posed the following set of restrictions, describing a

---

[1]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying

hypothetical individual of Plaintiff's age, education, and work history:

> [C]ould perform light work . . . . No climbing of ladders, ropes or scaffolds, occasional climbing ramps and stairs, as well as occasional crawl. [W]ould need to avoid moderate exposure to temperature extremes, humidity, and wetness, and no exposure on unprotected heights.  Could this hypothetical individual perform any of the past work, either as actually or generally performed? (Tr. 54).

Based on the above restrictions, the VE testified that the hypothetical individual could perform Plaintiff's past relevant work as a machine operator (Tr. 55).  She testified further that the above restrictions would allow for unskilled, exertionally light work of a packer (200,000 jobs in the national economy); sorter (150,000); and inspector (150,000) (Tr. 55).  The VE stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") (Tr. 55).

### D.    The ALJ's Decision

Citing the treating records, ALJ LaRoche found that Claimant experienced the severe impairments of "congenital heart disease status post aortic valve replacement and ascending aortic replacement and hypertension" but that none of the impairments met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15).  He noted that he considered the listings for chronic heart failure, ischemic heart disease, or aneurysm of aorta or major branches (Tr. 12-15).  He found that the conditions

---

of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

of an aneurysm, cholecystitis, and history of methamphetamine disorder were non-severe (Tr. 13). He found that Plaintiff's psychological limitations were exclusively mild (Tr. 13-14). He found that the alleged condition of sciatica was a non-medically determinable impairment (Tr. 14). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional limitations:

> [C]laimant cannot climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs. The claimant can occasionally crawl. The claimant should avoid moderate exposure to temperature extremes, humidity, and wetness. The claimant should have no exposure to unprotected heights (Tr. 15-16).

The ALJ acknowledged that the VE found that the above restrictions would allow for Plaintiff's past relevant work of a machine operator but "did not find sufficient evidence" to consider the job past relevant work (Tr. 20-21). Instead, he adopted the VE's testimony that an individual limited to the above RFC could perform the light, unskilled "other" work of a packer, sorter, and inspector (Tr. 20-21, 54-55).

In support of the non-disability finding, the ALJ cited Plaintiff's admitted ability to take care of his children, cook, wash, do laundry, and take his children for walks (Tr. 19). He noted that Plaintiff was currently prohibited from driving "due to infractions, not because of his impairments" (Tr. 19). He noted that Plaintiff's care had been conservative since the February, 2016 surgery and that Plaintiff had been discharged from treatment for non-compliance (Tr. 19). The ALJ cited May, 2017 treating records noting Plaintiff's report that he was currently doing "'light masonry work'" (Tr. 19).

-8-

## STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted).   The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 1152; 42 U.S.C. §405(g).   "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*).   Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).   However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly

detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6ᵗʰ Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6ᵗʰ Cir. 1989).

## <u>FRAMEWORK FOR DISABILITY DETERMINATIONS</u>

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Commissioner of Social Sec.*, 203 F.3d 388, 391–92 (6ᵗʰ Cir. 1999).

-10-

## ANALYSIS

### Listing 4.10

Plaintiff argues first that the evidence demonstrates that he medically equaled Listing 4.10 (*Aneurysm of Aorta or Major Branches*).  *Plaintiff's Brief,* (ECF No. 12, PageID.861.)(*citing* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.10).  He acknowledges, in effect, that he does not meet every element of Listing 4.10 but contends that the severity of his heart condition medically equals the listed impairment.

"Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Reynolds v. Commissioner of Social Sec.,* 424 Fed.Appx. 411, 414, 2011 WL 1228165, *2 (6th Cir. April 1, 2011)(*citing* 20 C.F.R. § 404.1525(a)).  At Step Three of the administrative sequence, "[a] Claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled [] and entitled to benefits."  At Step Three, the claimant must satisfy *all* of listing's criteria for a finding that s/he meets a listed impairment. *See Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 855 (6th Cir. 1986); *Houston v. Colvin,* 2017 WL 82976, at *2 (E.D. Mich. January 10, 2017)(Drain, J.)(same).  Moreover, Plaintiff bears the burden of establishing that he meets or medically equals a listed impairment.  *Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987).

### 1.   Requirements for Listing 4.10

To meet Listing 4.10, a claimant must demonstrate an "[a]neurysm of aorta or major branches, due to any cause (*e.g.*, atherosclerosis, cystic medial necrosis, Marfan syndrome, trauma), demonstrated by appropriate medically acceptable imaging, with dissection not controlled by prescribed treatment (see 4.00H6)." 20 C.F.R. Pt. 404, Subpt. P, App. 1., § 4.10.   In turn, 4.00H6 provides guidance as to how "dissection" is demonstrated under Listing 4.10:

> When does an aneurysm have 'dissection not controlled by prescribed treatment,' as required under 4.10? An aneurysm (or bulge in the aorta or one of its major branches) is dissecting when the inner lining of the artery begins to separate from the arterial wall. We consider the dissection not controlled when you have persistence of chest pain due to progression of the dissection, an increase in the size of the aneurysm, or compression of one or more branches of the aorta supplying the heart, kidneys, brain, or other organs. An aneurysm with dissection can cause heart failure, renal (kidney) failure, or neurological complications. If you have an aneurysm that does not meet the requirements of 4.10 and you have one or more of these associated conditions, we will evaluate the condition(s) using the appropriate listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1., § 4.00H6.

The ALJ stated that Plaintiff did not meet Listing 4.10, noting in relevant part that Plaintiff had failed to meet any one of the three conditions under the Listing necessary to show a dissection that was "not controlled" (Tr. 15)(see Listing 4.00H6 above).

In support of Plaintiff's claim that for all practical purposes he meets the Listing, he cites the interpretation of a December, 2015 CT of the chest stating that "aneurysmal dilation *may* have some compression of the right main pulmonary artery" (Tr. 267).  However, even

-12-

assuming that the somewhat qualified interpretation of the imaging study constitutes "proof certain" of compression, Plaintiff concedes that none of the studies "specifically show dissection," which is also required to meet Listing 4.10. (ECF No. 12, PageID.861.). Moreover, the record shows that Plaintiff underwent valve surgery within three months of the December, 2015 CT scan and experienced a good recovery and (by his own account) minimal symptomology thereafter. Therefore, (1) Plaintiff has not established that his condition was not controlled by prescribed treatment, and (2) his more severe symptoms did not last or would not be expected to last a 12-month period or longer as required to show disability. 42 U.S.C. §423(d)(1)(A).

Moreover, for Plaintiff's SSI claim, the period under consideration did not begin until the day of his March 21, 2016 application for benefits. *See Casey v. Secretary of Health & Human Servs.,* 987 F.2d 1230, 1233 (6th Cir. 1993)(for an SSI claimant, period under consideration begins on application date); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)("For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202–03 (2005)"). The evidence from this period which documents Plaintiff's recovery from the February, 2016 surgery forward contains virtually no support for a finding that he met Listing 4.10 or any other listing. While 2017 treating records note that Plaintiff's ability to receive medical care was compromised by his incarceration and the inability to find a primary care physician, the record does not contain prison medical records showing significant ongoing medical

problems or after his release, sought urgent or emergency treatment between April, 2016 and March, 2017.  Treating notes from March 31, 2016 state that Plaintiff was able to travel up north for several days approximately one month after surgery (Tr. 743).  Despite Plaintiff's initial failure to comply with the post-surgical medication regimen prescribed by his treating sources (Tr. 748, 757-758), he did not seek (and apparently did not require) treatment until March, 2017 (Tr. 738).  A March, 2017 chest x-ray was negative (Tr. 738).   Plaintiff was able to perform "light masonry work" as of May, 2017 and denied symptoms of cardiac disease (Tr. 763).  November, 2017 records by Dr. Sunikumar note that Plaintiff did not have acute complaints (Tr. 791), and as of the following month, tests for thrombosis potential were improved (Tr. 772).  The medical records are consistent with Plaintiff's testimony from the same month that he was able to engage in a full range of household activities and lift up to 30 pounds (Tr. 51).

### 2.  Whether Plaintiff Medically Equaled Listing 4.10

For largely the same reasons, Plaintiff's claim that he medically equaled a listed impairment does not provide grounds for remand[2]. (ECF No. 12, PageID.862.). First, the

---

[2]

Parties agree that SSR 17-2p which states that an ALJ may find that a claimant does not medically equal a listed impairment without the support of a medical opinion, applies in the present case. SSR 17-2p, 2017 WL 3928306, at *3-4 (March 27, 2017)(ALJ "responsible for the finding of medical equivalence" which must be based on "the preponderance of the evidence in the record").   However, a split of authority exists as to whether SSR 17-2p or the now-rescinded SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) applies to cases, such as this, where the claim for benefits was filed before the effective date for SSR 17-2 of March 27, 2017.  *See* Hearing and Appeals Law and Litigation Manual ("HALLEX") I-5-3-30, 2017 WL 1362776, at *5 (*last revised* October 2, 2017)(prior rules to be employed for

evidence for the period from March 21, 2016 forward contains scant support for a finding of disability, much less evidence that Plaintiff met or medically equaled any of the listed impairments. Second, while Plaintiff experienced significant symptomology as early as September, 2015, his condition was largely resolved following the February, 2016 surgery. As discussed above, he is unable to show that he medically equaled an impairment or was otherwise disabled for at least 12 months.

Third, Plaintiff has not made the case that the ALJ's equivalency finding is not supported or that his conditions actually equal a listed impairment. Under § 416.926(a), "an impairment is medically equivalent to a listed impairment in appendix 1 if it is *at least* equal in severity and duration to the criteria of any listed impairment." (Emphasis added). The regulation states in relevant part under (b)(1)(i) that a finding of medical equivalence can be made where the claimant has an impairment found among the listed impairments that (A)

---

applications filed before March 27, 2017). A number of courts have interpreted HALLEX to state that the prior rulings, which include SSR 96-6p, should be applied to claims filed before March 27, 2017. *Heffner v. Commissioner, Social Sec.*, 2017 WL 9292242, at *9 (D.S.C. August 3, 2017); *Foy v. Berryhill*, 2018 WL 3707837, at *6 (D.Md., August 3, 2018); *Atchley v. Berryhill*, 2018 WL 1135457, at *5–6 (D.S.D. February 28, 2018); *but see Balknight v. Commissioner of Social Sec.*, 2019 WL 4011881, at *27 (E.D.Mich. July 31, 2019)(SSR 17-2p to be applied retroactively to applications made before March 27, 2017). In contrast to SSR 17-2p, SSR 96–6p states that a Step Three finding that a claimant does not medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 must generally be supported by an opinion by an acceptable medical source. SSR 96-6p at *3 ("longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence . . . ."). The current transcript does not include an equivalency finding by an acceptable source. However, as discussed, above, the Court need not choose sides given that under either SSR 17-2p or the now-rescinded SSR 96-6p, a remand on the basis of the ALJ's equivalency finding is not warranted.

-15-

does not meet all of the requirements of the listing, or (B) meets all of the requirements but "one or more of the findings is not as severe as specified in the particular listing;" provided that (ii) "other findings related to [the] impairment . . . are at least of equal medical significance to the required criteria." Plaintiff has not offered any facts to support the argument that he medically equals a listing. For example, while he cites his "consistent chest pain," the records post-dating the February, 2016 surgery show most minimal or no symptomology. Even under the stringent standards set forth in SSR 96-6p, where the claimant cannot make a reasonable showing that he medically equals a listed impairment, the failure to obtain an equivalency opinion does not constitute grounds for remand. *See Smith v. Commissioner of Social Security*, 2019 WL 3243768, at *5 (E.D.Mich., June 30, 2019)(Davis, M.J.)(*adopted,* 2019 WL 3239252 (E.D. Mich. July 18, 2019)(*citing Lusk v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 405, 411 (6th Cir. 2004)). "It is the claimant's burden at this third step in the sequential evaluation to bring forth evidence to establish that he or she meets or equals a listed impairment." *Retka v. Commissioner of Social Sec.*, 1995 WL 697215, at *2 (6th Cir. November 22,1995)(*citing Evans v. Secretary of Health and Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987)). Accordingly, I recommend that the ALJ's Step Three finding that Plaintiff did not medically equal a listed impairment be upheld.

In closing, my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's history of a cardiac condition or his former personal or legal problems. However, because the ALJ's determination was well within the "zone of choice"

accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen, supra.*

### CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #13] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Docket #12] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled

as "Response to Objection #1," "Response to Objection #2," *etc.*

Dated: September 23, 2019          s/R. Steven Whalen
                                  R. STEVEN WHALEN
                                  UNITED STATES MAGISTRATE JUDGE

## CERTIFICATE OF SERVICE

I hereby certify on September 23, 2019 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants September 23, 2019.

                                  s/Carolyn M. Ciesla
                                  Case Manager for the
                                  Honorable R. Steven Whalen

-18-